**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BNSF Railway Co., ) | No. 07-8068-PCT-PGR |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | **ORDER** |
| Coconino Land and Cattle, LLC ) | |
| ) | |
| Defendant. ) | |
| ) | |

Currently before the Court is the Motion for Summary Judgment (Doc. 45) filed by BNSF Railway Co. (hereinafter "BNSF") wherein BNSF seeks judgment quieting its title to a portion of its transcontinental main line right of way (hereinafter "Subject Right of Way) located on federal land northwest of Williams, Arizona, as well as summary judgment on all claims and counterclaims made by Defendant Coconino Land and Cattle, LLC (hereinafter Coconino).  After careful consideration of the papers submitted, the Court finds the following.

I.   BACKGROUND

Between 1959 and 1965, the Atchison Topeka and Santa Fe Railway Company ("AT&SF") relocated its transcontinental main line tracks between Williams, Arizona and Crookton, Arizona. (Doc. 46, ¶9.) A segment of the relocated railroad line was projected by survey to run through the property ( hereinafter referred to as the "Dirty Smith Ranch") owned at the time by Curtis Cooper, effectively dividing the property. (Doc. 46, ¶ 13.)

Consequently, in 1965, AT&SF entered into a settlement agreement with Cooper providing that he would release all tort claims and claims for severance damages against AT&SF, as well as deed a strip of land across the Dirty Smith Ranch that would serve as AT&SF's railroad Subject Right of Way. According to the agreement, Cooper was to deed the remainder of the Dirty Smith Ranch that was not needed for railroad purposes to a separate but affiliated real estate management company called the Santa Fe Land Improvement Company. (Doc. 46, ¶¶ 16, 18.)

In 1984, the Santa Fe Land Improvement Company sold the Dirty Smith Ranch to a company called Roles Inn of America, Inc. ("Roles Inn"), which in turn conveyed the property to Peter and Katherine Groseta. (Doc. 46, ¶¶ 20-21.) Both deeds, from Santa Fe Land Improvement Company to Roles Inn and from Roles Inn to the Grosetas contained identical language disclaiming any recorded right of access and making the conveyances subject to "[a]ny loss, claim or damage by virtue of the failure of the public records to disclose that said land has any appurtenant means of ingress and egress or any frontage to and from a public highway or dedicated street." (Doc. 46, ¶ 27.)

The Groseta family and entities controlled by the Groseta family, such as Coconino, have owned the Dirty Smith Ranch since 1984. (Doc. 46, ¶¶ 21-25.) The present owner, Coconino, is controlled by Andy Groseta, son of Peter and Katherine Groseta. (Doc. 46, ¶ 25.) In 2005, Coconino put the Dirty Smith Ranch up for sale (the proceeds to go to the Catholic Community Foundation) and sought to obtain permanent access over the Subject Right of Way for ingress and egress to the otherwise landlocked parcel of land. (Doc. 46, ¶¶ 28-29.) Coconino persisted in claiming a permanent right to use the Subject Right of Way, therefore, BNSF seeks quiet title to its property. (Doc. 46, ¶ 30.) Coconino's answer and counterclaim are based on the assertion that "agents and employees" of AT&SF made "representations by words and conduct to Mr. Groseta" promising permanent access to the Dirty Smith Ranch. (Doc. 46, ¶ 31.) However, the deed by which the Grosetas acquired the

Dirty Smith Ranch contains a disclaimer of any appurtenant access. (Doc. 46, ¶ 27.) Despite BNSF's assertions to the contrary, Santa Fe Land Improvement Company employees Mr. Lemont and Mr. Fields have provided affidavits conceding that they have neither personal recollection of talking with any of the Grosetas nor any specific recollection of the sale of the Dirty Smith Ranch. (Doc. 46, ¶¶ 40-47.)[1]

Andy Groseta, Coconino's Rule 30(b)(6) representative, explains that although he was not privy to the specific terms of the promises made by the railroad to his parents granting permanent access over the Subject Right of Way, his father, Peter Groseta, had repeatedly told him of the oral promises. He testified that the railroad orally promised the Grosetas that they would always have a right to use the Subject Right of Way to access the property and the railroad and the Groseta Family had always acted consistent with that permanent right. Furthermore, he testified that the Grosetas relied on the oral promises made by the railroad in making their decision to purchase the property, as they would not have purchased property that they knew was landlocked. (Doc. 46, ¶¶ 37-39.)

In recent years, Coconino has attempted to sell the Dirty Smith Ranch. However, because the public record does not describe any access to or from the Dirty Smith Ranch, Coconino asserts that the property is essentially unmarketable, arguing that it is otherwise landlocked.

Coconino first filed suit against BNSF in state court in Coconino County, Arizona, seeking an irrevocable license to use the Subject Right of Way. Shortly thereafter, BNSF

---

[1] In his affidavit, Mr. Lemont states that he recalls "being involved in dealing with a property called the Pine Creek ranch, but I do not recall any details of the sale, I do not recall dealing with the Grosetas or an attorney named Jim Musgrove, and I do not know if the Pine Creek ranch was the same property purchased by the Grosetas." (Pine Creek Ranch was the permittee of a grazing allotment formerly held by the Groseta family, located immediately east of the Dirty Smith Property.

Mr. Fields states that he has "no independent recollection of the sale." The Court recognizes that BNSF may have misinterpreted the foregoing affidavits.

1  filed suit in federal district court in the District of Arizona and successfully removed the state
2  court action to district court for consolidation.
3      In its recent Motion to Amend, Coconino asserted that it was entitled to an easement
4  based on its prescriptive use since 1984 of the Subject Right of Way. (Doc. 46, ¶ 48.)
5  Coconino also asserted that if all else failed, then the Dirty Smith Ranch would be
6  "landlocked" and Coconino would be entitled to condemn a right of way of necessity over
7  the Subject Right of Way. (Doc. 46, ¶ 53.)
8  II.   LEGAL STANDARD AND ANALYSIS
9      The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of
10 Civil Procedure.  Summary judgment is properly granted when, after viewing the evidence
11 in the light most favorable to the non-moving party, no genuine issues of material fact remain
12 for trial.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
13 Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).
14     The moving party bears the burden of demonstrating that it is entitled to summary
15 judgment. Mur-ray Mgmt. Corp. v. Founders Title Co., 819 P.2d 1003, 1005 (Ariz. Ct. App.
16 1991).  If the moving party makes a prima facie case showing that no genuine issue of
17 material fact exists, the burden shifts to the opposing party to produce sufficient competent
18 evidence to show that a triable issue of fact does remain.  Ancell v. United Station Assocs.,
19 Inc., 803 P.2d 450, 452 (Ariz. Ct. App. 1990).  The Court must regard as true the non-moving
20 party's evidence, if it is supported by affidavits or other evidentiary material.  Celotex, 477
21 U.S. at 324. However, the non-moving party may not merely rest on its pleadings, it must
22 produce some significant probative evidence tending to contradict the moving party's
23 allegations, thereby creating a material question of fact.  Anderson v. Liberty Lobby, Inc.,
24 477 U.S. 242, 256-57(1986)(holding that the plaintiff must present affirmative evidence in
25 order to defeat a properly supported motion for summary judgment); First Nat'l Bank of Ariz.
26 v. Cities Serv. Co., 391 U.S. 253, 289 (1968).
27

As a preliminary matter, the Court recognizes that the property interest that Coconino seeks is similar to an easement, but is in fact not an *interest* in the Subject Right of Way. Rather, Coconino seeks an irrevocable license only to *access* the land. (Doc. 69.)

In support of its motion, BNSF contends that the Subject Right of Way is inalienable as a matter of federal law, and therefore, summary judgment must be granted. Northern Pacific v. Townsend, 190 U.S. 267, 272 (1903). BNSF maintains that a grantee of a federal railroad right of way does not retain power to overcome the designated purpose of the grant "by voluntary alienation of title or by abandoning possession to an adverse claimant." Barnes v. Southern Pacific Co., 16 F.2d 100, 103 (9th Cir. 1926). It further explains that it is prohibited for state law or any other use of the right of way to "impair the efficacy" of a railroad grant. Townsend, 190 U.S. at 271. Conversely, Coconino maintains that although BNSF is generally correct that rights of way granted to railroads by the federal government pursuant to acts of Congress are generally inalienable, the ban on conveyances applies strictly to conveying the title to the right of way; whereas the right of others to *use* the rights of way are *permitted* as long as the use, as stated above, does not "impair the efficacy" of the grant. Id. at 271. A careful reading of Barnes reveals that the Ninth Circuit may in fact also prohibit irrevocable licenses that grant land interests,

> Congress has not authorized the disposition of unused portions of the right of way. The power of the railroad company to alienate, as well as the power of others to acquire, any part thereof, is measured, not by what can be spared from railroad uses, but by what is required to meet such needs of the public or of individuals as fall within the scope of the principle already discussed. Privileges conferred by revocable licenses are, of course, excluded. In such cases the railroad company never loses its right to possession and control.

Barnes, 16 F.2d at 104. This Court opines that the Barnes Court distinguished between revocable and irrevocable licenses because of the level of permanency of the respective types of licenses and the loss of the control that concerned the Barnes court based on the original grant by Congress. However, Coconino seeks only *access* to the land, not an interest in the land, thus, it is not a typical irrevocable license Coconino seeks to obtain. Thus, there is no risk, as there was in Barnes, of the alienation of title or loss of possession or control.

Furthermore, the fact that Coconino has been using this land for over twenty years creates a strong inference in favor of Coconino that permitting it to obtain such a license will not impair the efficacy of the grant or hamper the control of the railroad. However, such is a fact driven question that is ultimately reserved for a jury to decide. Nevertheless, based on the foregoing, the Court finds that BNSF's Motion for Summary Judgment based on the argument that an easement is prohibited under federal law is DENIED.

**Prescriptive Easement Under Federal Law**

In <u>Himonas v. Denver & R.W.R. Co.</u>, 179 F. 2d 171, 173 (10th Cir. 1949)[2], the court was faced with the question of whether a right of way for an irrigation ditch and flume can be acquired by prescription across a railroad right of way acquired pursuant to the Act of March 3, 1875, 43 U.S.C.A § 934. According to the complaint, Himonas owned a tract of land located east of the right of way of the Railroad Company. He used a portion for crops and a portion to raise livestock by means of an irrigation ditch from Grassy Trail Creek across Defendant Railroad Company's right of way to such land and a storage reservoir on such land. For over 20 years Himonas and his predecessor in title used the ditch and flume to carry water from the creek across the Railroad Company's right of way to storage facilities on the land for beneficial use. In November, 1947, the Railroad Company tore out the flume. Consequently, Himonas sought damages and a decree requiring the Railroad Company to reconstruct the flume and sought to enjoin the Railroad Company from interfering with the conveyance of water through the ditch and flume across its right of way. <u>Id</u>.

The parties stipulated that the Railroad Company's right of way was acquired by a Federal grant under the Act of March 3, 1875, made to the Carbon County Railway

---

[2] While not binding on this Court, the case is instructive on the pending matter.

1 Company, the predecessor in title of the Railroad Company.[3]

2     By the grant under the Act of March 3, 1875, the Carbon County Railway Company
3 acquired only an easement for railroad purposes and only that easement passed to the
4 Railroad Company. The fee or servient estate remained in the United States. Great Northern
5 Ry. Co. v. United States, 315 U.S. 262, 272, (1942). Great Northern overruled earlier
6 decisions which had held that a railroad which acquired a grant for a right of way under the
7 Act of March 3, 1875 took a limited fee with an implied condition of reverter in the event the
8 railroad ceased to use or retain the land for the purposes for which it was granted. See also
9 Missouri-Kansas-Texas R. Co. v. Ray, 177 F.2d 454 (10th Cir. 1949).

10     Thus, the Railroad Company did not own the fee and the trial court found that it was
11 unable to grant any part thereof, and no right in the servient estate could be acquired by
12 prescription. Himonas, 179 F.2d at173 (10th Cir. 1950). Furthermore, the Railroad
13 Company could not grant any part of its right of way for private use nor could adverse
14 interests be acquired in such right of way for private use by prescription. Id. Significantly,
15 the Court of Appeals explained, "Congress did not intend to impose a barrier that could not
16 be crossed between areas lying on opposite sides of the right of way. The purpose of the
17 grant was to encourage, not impede, the development of the areas along the right of way."
18 It further advised, "Congress must have intended that crossings of the right of way could be
19 acquired *and other limitations imposed in favor of the public* upon the exclusive occupancy
20 of the Railroad Company of its right of way. Such was the conclusion of the Supreme Court
21 in Northern Pacific R. Co. v. Townsend, 190 U.S. 267, 272, (1903)(emphasis added).

22     Accordingly, the Himonas court realized that critical to determining whether an
23 easement should be granted is determining the *nature of the easement*. Id. at 172 -173 (10th
24 Cir. 1950). More specifically, the court provided,

25 ─────────────

26     [3] The trial court sustained a motion of the Railroad Company for a directed verdict
27 by the jury on the ground that a right of way for an irrigation ditch could not be acquired by
prescription across the Railroad Company's right of way.

> In the semi-arid regions of the west, water is the vitalizing element of agriculture. Out of the peculiar conditions and the necessities of that region has grown up a body of irrigation law. Crossings of railroad rights of way for irrigation ditches and canals are as essential as crossings for highways. The public is vitally interested in the application of water to beneficial uses. The utilization of water for irrigation and in the raising of livestock promotes the prosperity and well-being of the public as a whole. And so the states in the semi-arid west, by constitutional and statutory provision, have declared that waters belong to the public and have provided for condemnation of right of way for ditches under the power of eminent domain.

Himonas,179 F.2d at173 (10th 1950); See also Wiel, Water Rights in the Western States, 3 Ed., vol. 1, p. 657, Sec. 609.

The court concluded that because the irrigation ditch and flume were for public and not private benefit, Himonas and his predecessors in title could have acquired an easement by condemnation. It therefore follows that they could acquire such easement by grant from the Railroad Company or by prescription, as long as the ditch and flume were maintained and used so as not to interfere with the use of the right of way by the Railroad Company for railroad purposes. Himonas, 179 F.2d at174 (10th 1950); Townsend, 190 U.S. at 271.

A thorough understanding of Himonas is critical to the case at bar because it is clear that the court distinguished between easements acquired by grant or prescription for private use versus public use. Contrary to BNSF's contention, the case was not merely about permitting easements for crossings over railroad tracks as opposed to those running parallel to tracks. Rather, the Himonas court focused on the nature of the easement and whether the presence of the easement would confer a private or public benefit. Id. at 172.

Now that the Court has determined that railroads hold an easement and not a fee, it must determine whether Coconino is nevertheless entitled to beneficial use of the Subject Right of Way. This Court agrees with the Himonas court's interpretation of Congress's intent behind 43 U.S.C.A § 934. Thus, this Court finds that to acquire an easement by prescription under federal law, Coconino must establish that the easement would benefit the public as opposed to merely benefitting Coconino for private use. Himonas, 179 F.2d at174 (10th 1950). Such a decision is one based on facts, it is not a matter of law; therefore, it shall

be reserved for the factfinder. Accordingly, BNSF's Motion for Summary Judgment based on the argument that a prescriptive easement under federal law is barred is DENIED.

**Easement by Prescription Under State Law**

In order to establish a prescriptive easement under Arizona law, a party must demonstrate that the land which is allegedly subject to the easement has been actually and visibly used for a specific purpose for at least ten years and that the use was commenced and continued under a claim of right inconsistent with and hostile to the claim of another. LaRue v. Kosich, 66 Ariz. 299, 187 P.2d 642 (1947); Ammer v. Arizona Water Co., 169 Ariz. 205, 208-209, (Ariz.App.,1991); Paxon v. Glovitz, 203 Ariz. 63, 67 (Ariz. App., 2002).

BNSF contends that Coconino's prescription claim is factually unsupported. It argues that Coconino's contention that its use of the Subject Right of Way should be presumed hostile is not supported by any evidence. Furthermore, BNSF argues that Paxon does not apply to the case at bar because the Paxon court held that only an intended but imperfect grant of an easement could be perfected by use of property for the prescriptive period. Paxon, 203 Ariz. at 68-69 (App. 2002). BNSF avers that Coconino has provided no evidence of any intended agreement or grant, as required under Paxon the case cited by Coconino. However, as previously determined, this matter has yet to be resolved as there are issues of material fact as to whether Santa Fe Land Improvement intended to grant the Grosetas permanent use of the Subject Right of Way at the time they purchased their parcel of land. Pursuant to Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 456 (1992), inferences drawn from evidence must be viewed in the light most favorable to the nonmoving party, which in this case is Coconino. Furthermore, the party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Celotex Corp. v. Catrett, 477 U.S. at 324 (1986). Consequently, the testimony of Andy Groseta regarding his parents' assertion that they were promised permanent access to the Subject Right of Way in addition to the fact that Coconino used the land for more than twenty years weigh in favor of Coconino at the summary judgment phase.

Furthermore, the strong inference that no reasonable person would knowingly purchase a landlocked parcel of land contradicts BNSF's argument that the Railroad's employees- who by their own admission do not recall conversations with the Grosetas and testified more as to general railroad policy- did not promise the Grosetas permanent access to the Subject Right of Way.  The inference must be taken in the light most favorable to the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256-57(1986).  Accordingly, BNSF's Motion for Summary Judgment as to easement by prescription under state law is DENIED.[4]

**Equitable/Implied Easement Under State Law**

As previously stated, Coconino contends that when BNSF sold the Dirty Smith Ranch to its predecessors, BNSF employees or agents represented that access to the property over the Subject Right of Way would be included in the acquisition.  According to the testimony of Andy Groseta, his parents relied on those representations of permanent access to the property via the Subject Right of Way in making their decision to purchase the property.  According to Andy Groseta, without such representations, the Grosetas would not have purchased the property.  Thus, Coconino seeks an equitable/implied easement over the Subject Right of Way.

It is well established in Arizona that one may acquire an interest in land by means of an implied easement. <u>Koestel v. Buena Vista Public Service Corp.</u>, 138 Ariz. 578, (Ariz. App., 1984). The essential elements of an implied easement and the theory on which such an easement is based are:

> (1) The existence of a single tract of land so arranged that one portion of it derives a benefit from the other, the division thereof by a single owner into two or more parcels, and the separation of title; (2) before separation occurs, the use must have been long, continued, obvious or manifest, to a degree which shows permanency; and (3) the use of the claimed easement must be essential

---

[4] Based on Arizona's presumption that use was under a claim of right and not permissive with the burden then shifting to the owner of the property to show that the use was permissive, the Court finds that material issues of fact also exist as to whether Coconino and its predecessors' use of the Subject Right of Way was hostile under the law. <u>Spaulding v. Pouliot</u>, 218 Ariz. 196, 201, 181 P.3d 243, 248 (Ariz.App. Div. 2,2008.)

to the beneficial enjoyment of the parcel to be benefitted.  Porter v. Griffith, 25 Ariz.App. 300 (1975).

An implied easement can only be obtained in connection with a conveyance; as such, it is based on the theory that "whenever one conveys property he includes or intends to include in the conveyance whatever is necessary for its beneficial use and enjoyment." Koestel, 138 Ariz. at 580 (Ariz. App. 1984). In the matter *sub judice*, Coconino has failed to establish the requisite elements of an implied easement.  First, there is no evidence that the land at issue existed as a single tract of land so arranged that one portion of it derived a benefit from the other, the division thereof by a single owner resulting in two or more parcels, followed by the separation of title.  Porter, 25 Ariz.App. at 300 (1975).  Next, Coconino has failed to produce evidence that before the separation occurred, the use was long, continued, obvious or manifest, to a degree which showed permanency.  Id.  Without satisfying the essential elements of a cause of action, Coconino is unable to overcome summary judgment.  Consequently, BNSF's Motion for Summary Judgment is GRANTED as to Defendant's equitable/implied easement counterclaim.

**Common Law Easement by Necessity**

According to Coconino, the standard in Arizona for obtaining an easement by necessity is "whether such an easement is required in order to provide reasonable access to the property." Chandler Flyers, Inc. v. Stellar Dev. Corp., 121 Ariz. 553, 554 (Ariz. App. 1979)(citing Solano Land Co. v. Murphey, 69 Ariz. 117, 125 (1949), construing Arizona's statutory provisions pertaining to private ways of necessity, A.R.S. §§ 1201 and 1202.). Pursuant to Chandler, the landowner seeking the easement of necessity need not show that without the easement there is *no* access whatsoever to the property. Id.  The court also recognized that easements of necessity have been denied where it has been established that reasonable access to the property exists even in the event that denial of the easement caused considerable hardship.  Id. (citing Lancaster v. City of Columbus, 333 F.Supp. 1012 (N.D.Miss.1971); Miller v. Edmore Homes Corp., 285 App.Div. 837, 137 N.Y.S.2d 324

1  (1955); Vissering v. Granberry, 344 S.W.2d 898 (Tex.Civ.App.1961); Fones v. Fagan, 214
2  Va. 87, 196 S.E.2d 916 (1973)).  In response, BNSF argues that Coconino has failed to
3  explain the photographs showing visible roads in the vicinity of the Dirty Smith Ranch.
4  BNSF hired an investigator who found a road leading north from the Dirty Smith Ranch
5  which can reach a public highway by way of crossing private land. Id.  It appears that BNSF
6  attempts to disparage Andy Groseta's deposition testimony regarding the fact that he has not
7  driven that northern route, implying that he has failed to investigate the possibility of gaining
8  access to Dirty Smith Ranch by other roads that cross private property.
9  	According to Coconino, the access that could potentially exist presently runs across
10 private land owned by Mr. Allen Grantham.  In his affidavit, Mr. Grantham unequivocally
11 refused to grant an easement over his land thereby seemingly preventing reasonable
12 alternative access to the Dirty Smith Ranch by the northern route.  Therefore, whether
13 Coconino is able to demonstrate necessity under Arizona law is a question of material fact,
14 as it depends on whether or not those roads in question will in fact create reasonable access
15 to the Groseta's property over other private land.  Consequently, summary judgment is
16 DENIED as to Coconino's claim for easement by necessity.
17 **Easement by Private Condemnation**
18 	Coconino contends that pursuant to Arizona Revised Statutes 12-1201 and 12-1202
19 (A.R.S. §§ 12-1201, 1202), it is entitled to condemn a private way of necessity over the
20 maintenance road within the Bypass Railroad Path from the Dirty Smith Ranch to the Airport
21 Road.  The private way of necessity sought is limited to *a non-exclusive right to use the*
22 *maintenance road* to ensure ingress and egress and gain the present and future beneficial use
23 of its land without interfering with the operations of the Railroad Company in the use of the
24 Railroad Path and Bypass Railroad Path.  Furthermore, it seeks to avoid future potential
25 litigation by seeking an irrevocable right thereto.
26 	In its Reply, BNSF argues that since the passage of Proposition 207 in Arizona,
27 private property may only be "taken" for "public use" as defined in the statute.  A.R.S. § 12-

- 12 -

1136. BNSF cites Inspiration Consol. Copper Co. v. New Keystone Copper Co., 16 Ariz. 257 (1914) arguing that in establishing the scope of private condemnation under the Arizona Constitution, the Arizona Supreme Court refused to designate a private way of necessity as a "public use." Instead the court explained that under Arizona law, a private way of necessity is a private use with associated public benefits. Id. 16 Ariz. at 261, 262 (1914). BNSF continues, under A.R.S. § 1137(5)(b), "public benefits of economic development" are expressly excluded from the statutory definition of "public use". BNSF's interpretation, however, is misplaced. In the case at bar, Coconino seeks access to a parcel of land that is allegedly landlocked. Such access that it has had for over twenty years and without which, it contends, there is no ingress or egress to the property. The fact that the property is being sold does not necessarily amount to economic development as interpreted by BNSF, especially in light of the fact that the proceeds of the sale are not going into the pocket of Coconino, instead are going directly to a charitable organization. The Court finds that clearly there are genuine issues of material fact that exist, particularly as to public use versus public benefit, economic development, and the necessity of the right of way in question. Accordingly, summary judgment is DENIED as to easement by private condemnation.

**Arizona Statute of Frauds**

In it motion, BNSF further contends that Coconino cannot obtain an easement based on alleged oral promises by unidentified persons because such circumstances are barred by Arizona's statute of frauds. A.R.S. § 44-101(6). Arizona's statute of frauds requires a written contract for "the sale of property or an interest therein." Id. Moreover, the written contract must be signed by the party that is sought to be charged. Id. Whether such an agreement is needed for the granting of a license has not been established by BNSF. Coconino strictly seeks irrevocable access to the Subject Right of Way by virtue of an irrevocable license, it does not seek an (ownership) interest therein. In fact, Coconino has unequivocally stated that *it does not seek an interest* in the Subject Right of Way. (Doc. 69. p.4.) Thus, the statute of frauds does not apply to the case at hand.

- 13 -

**Arizona's Statutes of Limitations**

BNSF further argues that Coconino's claim is also barred by several of Arizona's statutes of limitations. Citing the following statutes, A.R.S. §§ 12-543, 12-546, & 12-548, BNSF contends that the time in which Coconino had to file this suit has expired. BNSF explains that the deed from Santa Fe Land Improvement Company to Roles Inn and the subsequent deed from Roles Inn to the Grosetas was recorded more than twenty years prior to the commencement of this action and both unequivocally disclaimed any right of access to the Subject Right of Way. However, in identifying the specific codes cited by BNSF, it is clear that none of them apply to the pending matter. Each code specifically applies to discrete circumstances, none of which exist in the case *sub judice*.

*Assuming arguendo*, that the statute of limitation codes provided by BNSF did apply, Andy Groseta, on behalf of Coconino, contends that he did not discover the terms of the deed, or lack thereof, until recently. Furthermore, according to the record, this matter did not become an issue until 2005 when, upon specific request, BNSF refused to put into writing the alleged promises made to the Grosetas pertaining to their right to permanent access to the Subject Right of Way. Accordingly, summary judgment is DENIED as to Arizona's statute of limitations.

**The Doctrine of Laches**

BNSF contends that Coconino's claims are barred by the equitable doctrine of laches. When it has been established that there has been an unreasonable delay in asserting a claim and such delay causes prejudice to the defendant, a claim may be barred by the equitable doctrine of laches. BNSF argues that the doctrine of laches applies here because the original purchasers of the Dirty Smith Ranch are deceased and none of BNSF's witnesses from AT&SF have memories supporting Coconino's claims; thus, BNSF argues that it is unjust and unreasonable to permit Coconino to continue taking discovery on a "twenty year old claim." However, laches is an equitable defense, and equitable defenses by definition are questions of fact. Therefore, it is not a determination to be made by the Court.

1  Consequently, summary judgment is DENIED as to BNSF's request for the application of
2  the equitable doctrine of laches.
3  III.    CONCLUSION
4          Accordingly,
5          IT IS HEREBY ORDERED DENYING BNSF's Motion for Summary Judgment
6  seeking judgment quieting its title to the Subject Right of Way. (Doc. 45.)
7          IT IS FURTHER ORDERED DENYING BNSF's Motion for Summary Judgment as
8  to all of Coconino's claims and counterclaims except Equitable/Implied Easement.  (Doc.
9  45.)
10         IT IS FURTHER ORDERED GRANTING BNSF's Motion for Summary Judgment
11 as to Coconino's claim for Equitable/Implied Easement.  (Doc. 45.)
12         DATED this 25th day of March, 2009.

Paul G. Rosenblatt
United States District Judge